# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| RUBY NEGUS | § | |
| | § | |
| | § | |
| V. | § | CASE NO. 4:12-CV-643 |
| | § | (Judge Mazzant) |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner denying her claim for disability insurance benefits. After carefully reviewing the briefs submitted by the parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be remanded.

## HISTORY OF THE CASE

Plaintiff filed her application for disability insurance benefits under Title II of the Social Security Act on August 12, 2010, alleging disability beginning on November 27, 2009, due to multiple mental and physical problems (TR 150-151, 175). This application was denied initially by notice and upon reconsideration, after which the claimant timely requested a hearing before an ALJ. After holding a hearing on September 27, 2011, the ALJ denied benefits on January 27, 2012 (TR 31-47, 34-43). A request for review to the Appeals Council was denied on July 31, 2012, making the decision of the ALJ the final decision of the Commissioner leading to judicial review (TR 7-12).

## STATEMENT OF THE FACTS

Plaintiff was born on September 29, 1980, making her a 29-year-old female at the time of her onset date and 31 years old at the time of the final administrative decision (TR 41, 150).

At the administrative hearing Plaintiff testified that she was injured while serving in the Air Force (TR 53). She stated that things like breathing too deeply, walking up stairs, or lifting more

than five pounds caused her to experience pain (TR 55). Plaintiff stated that the military placed her on complete medical restriction and bed rest (TR 56). Plaintiff testified that her impairments had continued to worsen and that she continued to experience chronic pain (TR 54, 59). She was anxious and depressed all the time and suicidal at a few points (TR 54, 59). She testified that she had severe pain in her legs, back, and chest daily (TR 63). She also experienced three to four migraines each week where she had to lie down for relief (TR 63). Plaintiff stated that while sitting or standing, her feet would swell and she experienced pain in her hands so severe that she could not bend her fingers (TR 63-64). She stated that the pain lasted for hours at a time and was occasionally so severe that she was hospitalized (TR 64). Plaintiff further stated that when she stood for longer than five minutes her legs swelled and changed color and temperature (TR 75). Also, her back began to hurt and she felt dizzy (TR 75). She used a shower seat because she is unable to stand for the duration of the shower (TR 76).

Plaintiff also testified that her depression caused constant racing thoughts, and she was anxious all the time (TR 68-69). She stated that she suffered long periods of deep depression and was constantly fatigued (TR 69). She further stated that concentrating on one thing at a time was very difficult (TR 73). She testified that her severe chest and back pain along with her palpitations and superventricular tachycardia attacks caused her to leave work many times and that other nurses had to fill in for her (TR 73).

The ALJ asked if Plaintiff thought she had somatoform disorder (TR 81). Plaintiff answered in the affirmative at first, but when she wavered in her understanding of the disease, the ALJ explained that somatoform disorder can be where somebody thinks they are sick although there is no real support but they can't function because they're always thinking about their pain (TR 82). Plaintiff replied that she knows her conditions are real and she has actual physical problems (TR

82–83). She stated that her illnesses are not perceived but rather result in real physical pain (TR 84).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

After a discussion of the medical data regarding Plaintiff and hearing testimony, the ALJ made the prescribed sequential evaluation. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of November 27, 2009 (TR 36). The ALJ further found that Plaintiff had severe impairments of costochondritis, osteopenia, chronic pain syndrome, bipolar disorder, and somatoform disorder (TR 36). The ALJ concluded that although Plaintiff's medical impairments were severe, they were not severe enough either singly or in combination to meet or medically equal one of the listed impairments (TR 37). The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work limited by a restriction to simple tasks and instructions (TR 38). The ALJ then determined that Plaintiff was unable to perform any of her past relevant work (TR 41). The ALJ then determined that there were jobs in the national economy that Plaintiff could perform (TR 42). The ALJ concluded that Plaintiff was not disabled from November 27, 2009, through the date of his decision (TR 42).

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995), and conflicts in the evidence

are resolved by the Commissioner. *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook,*, 750 F.2d at 393. In determining a capability to perform "substantial gainful activity," a five-step "sequential evaluation" is used, as described below. 20 C.F.R. § 404.1520(a)(4).

## SEQUENTIAL EVALUATION PROCESS

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520 (2012). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to an impairment described in 20 C.F.R., Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f); 42 U.S.C. § 1382(a).

## ANALYSIS

Plaintiff asserts the following three issues on appeal: (1) whether new and material evidence submitted to the Appeals Council diluted the record such that the ALJ's decision was not

substantially supported; (2) whether the ALJ failed to properly consider the effects of Plaintiff's somatoform disorder when making the credibility and residual functional capacity findings; and (3) whether the ALJ failed to give good reasons for rejecting the opinions of Plaintiff's VA doctors that she was unable to work.

After obtaining her nursing degree, Plaintiff served four years in the United States Air Force, from 2003 to 2007 (TR 51, 541). While in the Air Force, Plaintiff suffered spine and rib injuries and experienced tachycardia and chest pain (TR 53–55, 433). In 2004 she experienced a back injury while performing a physical training exercise in Korea (TR 544). Plaintiff continued to have residual back pain which radiated into her left leg (TR 544). In 2006, while stationed in Italy, Plaintiff fell into a manhole and hit the left side of her chest (TR 544). She developed pain along the costochondral junction (TR 544).

On June 1, 2011, the Department of Veterans Affairs granted Plaintiff's April 9, 2010 claim for individual unemployability after the agency determined that Plaintiff was "severely disabled due to service connected disabilities, affecting numerous body systems" (TR 730–731). The VA held, "It appears only reasonable to conclude that these conditions, in combination, would preclude you from obtaining and retaining gainful employment" (TR 731).

The earliest medical record before the ALJ was from Plaintiff's December 2006 emergency room visit and admission to Denton County Regional Medical Center for chest pain and heart palpitations (TR 390–391). Her treatment provider's impression was chest pain, leg pain, palpitation, and weight loss (TR 391).

On May 31, 2007, while Plaintiff was still on active duty with the Air Force, a Medical Board was convened to determine her fitness for deployment due to her chest pain and tachycardia (TR 443). The medical narrative prepared for the board indicated that Plaintiff's chest pain was thought

to be musculoskeletal after extensive testing failed to show another cause (TR 443). Plaintiff was unable to perform a full fitness assessment (TR 443). A second medical narrative presented to the board related that Plaintiff was seen "many times" for treatment of pain and palpitations while stationed in Italy (TR 441). She also suffered from anxiety related to her medical conditions (TR 441). Her diagnoses were chest wall pain due to costochondritis and tachycardia (TR 442). The physician related that Plaintiff was limited in her ability to exert herself, to carry heavy loads, or unable to endure the rigors of deployment (TR 442). On June 4, 2007, a Physical Profile Serial Report was issued by a USAF health care provider (TR 455). The profile limited Plaintiff's lifting, pushing, and pulling to twenty pounds and restricted her from running and jumping (TR 455).

A lumbar MRI was performed in November 2007 (TR 444). It showed a disc bulge in Plaintiff's lumbar spine which displaced the exiting nerve root (TR 444). A peripheral nerve exam performed at the Dallas VA hospital on November 14, 2007, revealed findings consistent with neuropathies caused by Plaintiff's lumbar impairment (TR 545–546). A general physical exam performed the same day noted that Plaintiff suffered from chronic chest pain, tachycardia and heart palpitations, migraines, gastritis, neuropathy, and disc disease (TR 548).

On April 26, 2008, Plaintiff was treated in the emergency room of Denton Regional Medical Center for heart palpitations (TR 381). An EKG showed narrow-complex tachycardia (TR 381) She was discharged after her heart rhythm stabilized (TR 382-385).

Plaintiff was also treated by Dr. Seval Gunes in 2008 (TR 454). At a visit in July 2008, Plaintiff related that she had an exacerbation of chest pain which radiated to her arms (TR 454). Dr. Gunes listed Plaintiff's active problems as left chest wall pain, left costochondritis, lumbar radiculopathy, and lumbar disc degeneration (TR 454). Her current prescriptions included the anti-inflammatory and pain medications hydrocodone, tramadol, and etodolac and the anti-anxiety

drug xanax (TR 454). At a follow-up appointment in October 2008, Plaintiff reported continued chest and back pain as well as numbness and paresthesia in her left foot (TR 452–453). Dr. Gunes opined that Plaintiff's lower extremity radiculopathy was caused by her lumbar disc degeneration and the L5-S1 disc contacting the S1 nerve root (TR 453).

On November 18, 2008, Plaintiff presented to Dr. Odette Campbell for an initial consultation (TR 433). Plaintiff displayed severe pain upon palpitation of her chest, and Dr. Campbell noted a visible bulging deformity in the upper left side of her rib cage (TR 433). Plaintiff reported that her chest pain was so bad that she had problems wearing undergarments, and she fatigued easily (TR 433). Plaintiff also stated that she suffered from heart palpitations, back and extremity pain, and migraines (TR 433). Plaintiff stated that her migraines could last for days and disrupted her activities of daily living (TR 433). Dr. Campbell noted that Plaintiff appeared anxious (TR 433). On examination, Dr. Campbell noted that Plaintiff had pain and numbness in her left arm and leg. (TR 435). Dr. Campbell also noted that Plaintiff suffered from chronic costochondritis, and x-ray evidence showed a lower back impairment (TR 435). Dr. Campbell advised that Plaintiff should avoid lifting more than five pounds and should rest frequently and use a handicapped tag for shorter traveling distance (TR 436).

An April 2009 treatment note from Dr. Campbell stated that Plaintiff was unable to complete the fall 2008 semester at the University of North Texas because she was "in and out of the hospital during the above mentioned months and was unable to commute to and from class or to complete the coursework required" (TR 438). Dr. Campbell noted that Plaintiff was subject to bed rest at any time as needed (TR 438). Dr. Campbell also opined that Plaintiff qualified for a "medical drop" from her spring 2009 classes (TR 438).

An x-ray performed on June 5, 2009, showed a narrowing of the disc space at L5-S1 (TR

440). On June 17, 2009, Dr. Amy Wood at Advanced Wellness and Rehab Center wrote a "To Whom It May Concern" letter in which she stated that Plaintiff had a bulging disc at L5-S1 which displaced the S1 nerve root (TR 451). Dr. Wood opined that the displaced nerve root caused Plaintiff's left foot numbness and leg pain (TR 451). Dr. Wood further stated that Plaintiff's spine injury may have been the result of a fall into a manhole around March 2006 (TR 451). On July 3, 2009, Dr. Reynardo Adorable, one of Plaintiff's treating doctors at Advanced Wellness and Rehab Center, wrote another "To Whom It May Concern" letter in which he stated that Plaintiff would drop her summer and fall 2009 college classes due to her medical condition (TR 439, 445).

A spine exam was performed at the Dallas VA hospital on July 30, 2009 (TR 544). The examiner noted that Plaintiff was in daily pain and experienced tenderness along the costochondral junctions (TR 544). Plaintiff also continued to have back pain from her 2004 training accident which radiated down her left leg (TR 544). The examiner noted that Plaintiff also suffered from fatigue and poor endurance (TR 545).

A psychological exam was administered at the VA hospital in August 2009 (TR 541). The examiner noted that Plaintiff had a ten percent disability rating for somatoform disorder but was requesting a higher rating (TR 541). The examiner related that Plaintiff's pain had progressively worsened, which caused an increase in her frustration and anxiety (TR 542). Plaintiff tended to "over interpret" physical cues, including pain and changes in heart rate and breathing patterns, which seemed to trigger anxiety attacks (TR 542). Plaintiff also experienced depressive symptoms such as depressed mood, crying spells, anhedonia, and reduced appetite (TR 542). Plaintiff also reported that she had problems with concentration and fatigue (TR 542). The examiner diagnosed Plaintiff with a mood disorder and a somatoform disorder (TR 543). The examiner also noted that Plaintiff "experiences more impairment than the physical findings and has a tendency toward somatization"

and that her "somatoform disorder and mood disorder both appear to have worsened since her last evaluation" (TR 544).

Plaintiff visited the emergency room at Denton Regional Hospital twice in August 2009 and once in January 2010 (TR 456, 462, 477). On August 3, 2009, she was treated for chest and bilateral leg pain (TR 462). She was assessed with chronic back pain, atypical chest pain, and chronic lumbar radiculopathy (TR 468). On August 7, 2009, she was treated for heart palpitations (TR 456). She was diagnosed with palpitations and an anxiety reaction (TR 458). On January 5, 2010, Plaintiff was treated for abdominal pain (TR 477).

Plaintiff began pain management with Dr. David Mantsch in late 2009 (TR 612). In her initial pain evaluation, Plaintiff reported that she needed help with her leg, chest, and back pain as well as with her migraines (TR 612). She stated that she missed work and lost jobs due to her pain (TR 613). Dr. Mantsch observed that Plaintiff ambulated with a limp and was in mild distress (TR 421). He diagnosed low back pain, chronic pain syndrome, cervical radiculitis or brachial neuritis, and pain in limbs (TR 422). Dr. Mantsch made those diagnoses after regular visits through May 2010 (TR 414, 417, 426, 429, 432). In May 2010, Plaintiff reported that she developed a high tolerance to oxycodone and stomach cramps and would like to decrease her dosage (TR 413).

In 2010 records from Plaintiff's treating doctor at Women's Wellness and Aesthetics, Plaintiff was noted to suffer from leg and back pain, irritable bowel syndrome, anxiety, and migraines (TR 504–505). A bone density scan showed that she suffered from osteopenia (TR 505). Records from Women's Wellness and Aesthetics in 2011 show that Plaintiff continued to suffer from migraines, chest and back pain, and anxiety (TR 734–735).

Plaintiff sought help for depression from the Dallas VA hospital in March 2010 (TR 565). Plaintiff reported that she was sad and overwhelmed at times (TR 565). She was assessed with

chronic back and neck pain, GERD, and depression (TR 566). She was started on celexa, an anti-depressant (TR 566).

In a mental compensation and pension exam performed in June 2010, Plaintiff was diagnosed with bipolar disorder and somatoform disorder (TR 554). The examiner opined that Plaintiff's migraine headaches were "most likely debilitating and would limit employability" (TR 555). The examiner did not believe that Plaintiff was unemployable solely due to her mental impairments, but she felt that Plaintiff's reliability and productivity were reduced by her mental symptoms (TR 555).

A physical compensation and pension exam was also performed in June 2010 (TR 537). The examiner diagnosed recurrent complex migraine headaches that occurred one to two times a week and which lasted six hours at a time (TR 539). The examiner noted that the migraines prevented Plaintiff from doing any type of work (TR 539). The examiner also opined that Plaintiff's tachycardia would prevent her from working because of its frequency (TR 539). The examiner noted that Plaintiff's costochondritis would prevent her from performing her past work as a nurse (TR 539). Another examiner, specifically charged with evaluating Plaintiff's back impairment, diagnosed lumbosacral strain, degenerative disc disease, and lower extremity radiculopathy (TR 540). Plaintiff's back impairments alone would limit her to sedentary work with the flexibility to stand and stretch every forty-five minutes to one hour (TR 540).

Plaintiff continued to see Dr. Mantsch for pain management in June, July, and August of 2010 (TR 408–412, 608). Plaintiff continued to experience leg, back, chest, and limb pain (TR 408, 412, 608). She also suffered from severe insomnia and panic attacks (TR 412). Dr. Mantsch observed Plaintiff's antalgic gait and pain with range of motion (TR 409, 607).

In October 2010, a non-examining state agency medical consultant issued a physical residual functional capacity opinion (TR 623–630). The consultant opined that Plaintiff could perform

medium work, which requires lifting up to fifty pounds occasionally and twenty-five pounds frequently (TR 624). In November 2010, Plaintiff was again treated for heart palpitations at Denton Regional Hospital (TR 713).

On December 27, 2010, Plaintiff underwent a consultative psychological exam performed by Robert Beck, Ph.D (TR 632–638). Dr. Beck administered a battery of psychological tests, including the McGill Pain Questionnaire which showed Plaintiff scored in the highest category of pain (TR 633). Plaintiff also scored in the highest category of disability due to pain on the Oswestry Disability Rating Questionnaire (TR 633). Other tests showed that Plaintiff was severely depressed and anxious, and she showed above average somatization (TR 635). The mental status exam also showed significant errors in concentration and attention (TR 636). Dr. Beck diagnosed bipolar/schizoaffective disorder and PTSD (TR 637–638). He assessed Plaintiff's GAF at forty to forty-five (TR 638).

On December 30, 2010, Plaintiff voluntarily sought detox treatment from Mayhill Hospital for her dependency on prescription pain medication (TR 643). Plaintiff took the medication as prescribed and never exceeded doses, but she wished to be weaned off the medication (TR 643). Upon admission, Plaintiff was diagnosed with bipolar disorder and polysubstance dependence, and her GAF was thirty (TR 658). Plaintiff was discharged from the detox program on January 5, 2011, with a GAF of fifty (TR 655).

On January 21, 2011, a non-examining state agency medical consultant issued a psychiatric review technique opinion and a mental residual functional capacity opinion (TR 662–678). The consultant opined that Plaintiff suffered from mild limitation in her activities of daily living and moderate limitation in her social functioning and concentration, persistence, or pace (TR 672). The consultant found that Plaintiff had numerous moderate limitations in her vocational and social

11

functioning, but concluded that she could perform detailed but not complex work (TR 676–678).

Plaintiff was treated by Dr. Mark Klein and Dr. Mark Gibbs in 2011 (TR 695–701, 720). She continued to suffer from chest pain and tenderness, tachycardia, and chronic pain syndrome (TR 695-701). On March 8, 2011, Plaintiff again sought emergency treatment for palpitations at North Texas Medical Center (TR 681–82, 727).

Plaintiff's first issue asserts that the Appeals Council failed to properly consider new evidence Plaintiff submitted on appeal. The ALJ issued a decision on January 27, 2012, and Plaintiff submitted new evidence to the Appeals Council on May 15, 2012 (TR 260-379).

When a district court reviews a disability claim, it must consider the entire administrative record, which includes any action the Appeals Council has taken. *See Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). When the Appeals Council receives a request for review, it "may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge." 20 C.F.R. § 404.967. When the Appeals Council declines to grant a request for review, the ALJ's decision becomes the final decision of the Commissioner. *Higginbotham*, 405 F.3d at 337. "The Appeals Council should review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Henderson v. Astrue*, No. 3:10-CV-0589-D, 2011 WL 540286, at *4 (N.D. Tex Feb. 15, 2011) (citing 20 C.F.R. § 404.970). Regardless of the outcome at the Appeals Council, claimants are permitted to send additional evidence in connection with the request for review as long as it is relevant to the time periods where disability is alleged. *See* 20 C.F.R. 404.970(b). New evidence received at the Appeals Council must be considered with a request for review. *Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 336 (N.D. Tex. 2003); *see also Carry*, 750 F.2d at 486 . When evaluating that evidence the Appeals Council must follow the same rules that the ALJ follows. 20

C.F.R. § 404.1527(e)(3). New evidence is "material" if: (1) the evidence "relates to the time period for which the disability benefits were denied," and (2) "there is a reasonable probability that [the] new evidence would change the outcome of the [Commissioner's] decision." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

The United States Court of Appeals for the Fifth Circuit cautions against remanding cases based on new evidence presented to the Appeals Council. *See Jones v. Astrue*, 228 F. App'x 403, 406-07 (5th Cir. 2007) (citing *Higginbotham*, 405 F.3d at 334 ("final decision" of the Commissioner includes evidence presented for the first time to the Appeals Council).

The new evidence included over one hundred pages of medical records (TR 260–379). Included were records covering September 2010 through January 2012 from Drs. Hayee and Vu from Flower Mound Interventional Pain Physicians (TR 260–284). The doctors diagnosed Plaintiff with chronic pain due to trauma, musculoskeletal chest pain, intercostal neuralgia, thoracic spondylosis, lumbosacral radiculopathy, and degenerative disc disease (TR 260, 266).

The evidence submitted to the Appeals Council also contained treatment records from Dr. Sanjoy Sundaresan at Texoma Spine Center (TR 318–331). Dr. Sundaresan noted that Plaintiff suffered from chronic anxiety and depression which was consistent with her chronic pain condition (TR 323). The doctor recommended spinal injections and medications for Plaintiff's pain and ordered an EMG nerve study (TR 325). He opined that Plaintiff's chronic pain was unlikely to be cured by surgery (TR 325). Facet injections were administered on April 5, 2012 (TR 328–329). An EMG suggested chronic bilateral lumbar radiculopathy (TR 321).

Also included were records from a psychological evaluation performed by James R. Harrison, Ph.D. (TR 349–376). Dr. Harrison conducted a clinical interview and administered several questionnaires and assessments (TR 354). Based on the interview and testing, Dr. Harrison assessed

Plaintiff with bipolar disorder, PTSD, dysthymic disorder, and pain disorder (TR 360). Dr. Harrison opined that Plaintiff had marked limitations in her ability to perform detailed work, make simple work-related judgments, interact appropriately with coworkers and supervisors, and respond to routine changes in the workplace (TR 374–375). Dr. Harrison believed she had an extreme limitation in her ability to respond to work pressures and complete a normal workday and workweek without interruption from her psychologically based symptoms (TR 375). Plaintiff's psychological symptoms also exacerbated her degree of functional impairment that she experiences from anatomic pain and fatigue (TR 375). Dr. Harrison believed the foregoing limitations were in place since November 27, 2009 (TR 374).

The Appeals Council considered Dr. Harrison's examining opinions but rejected them because "[t]his new information is about a later time" (TR 8). Plaintiff asserts that this decision to not even consider Dr. Harrison's opinions was error. Plaintiff asserts that Dr. Harrison specifically noted that his opinion reflected Plaintiff's functioning from November 27, 2009, through the date he signed the opinion, May 11, 2012 (TR 375-376). Plaintiff argues that since Dr. Harrison's report relates to the period on or before the date of the ALJ's decision, it should have been considered by the Appeals Council under the appropriate standards for weighing examining sources.

The Commissioner points the Court to unpublished decision *Beck v. Barnhart*, 205 F. App'x 207 (5th Cir. 2006), to support the notion that since the Appeals Council did not consider the submitted evidence because it was determined to be non-material, the court cannot use this evidence as a basis for reversal. The Commissioner goes on to assert that the relevant period of time ended on January 27, 2012, and that Dr. Harrison's April 2012 evaluation and treatment records are from February through April 2012. The Commissioner argues that the decision not to evaluate these records which were outside of the relevant period of time is not error. Finally, the Commissioner

14

asserts that post-decision evidence that the Appeals Council explicitly does not consider due to non-materiality is outside the scope of *Higginbotham* and may not provide a basis for reversing the ALJ's decision.

The Social Security Regulations do not require that evidence be dated before the ALJ's decision to be material, but that it relate to the period on or before the ALJ's decision. *See* 20 C.F.R. § 416.1476(b)(1).

Here, Dr. Harrison clearly stated that his opinions applied to the time period relevant to Plaintiff's claims, therefore the opinions were material and should be considered as part of the record (TR 376). The fact that Dr. Harrison's opinions were completed after the ALJ's decision is immaterial in this case. Dr. Harrison specifically noted that his opinion reflected Plaintiff's functioning from November 27, 2009, through the date he signed the opinion, May 11, 2012 (TR 375-376). Thus, the Appeals Council erred in not considering this evidence. The Court also finds that the Commissioner's reliance upon *Beck* is misplaced. In *Beck*, the Fifth Circuit found that "the substantial evidence standard does not apply to evidence submitted to the Appeals Council and rejected by it as neither new nor material." *Beck*, 405 F. App'x at 214. The Fifth Circuit also noted that the evidence submitted to the Appeals Council was not material. In this case, the issue raised is whether the evidence was material and the rejection of the evidence was error. Since the Court finds that Dr. Harrison's opinions, by his own report, applied to the relevant time, the Appeals Council was required to review the evidence upon the appropriate standards.

Because the Appeals Council improperly rejected Dr. Harrison's opinion as immaterial, it did not perform the analysis required when evaluating source opinions. The weight given to Dr. Harrison's opinions must be determined upon remand. The Court cannot reweigh the evidence, try the issue *de novo*, or substitute its judgment on the ultimate issue of disability for that of the

Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court finds that remand is necessary so that Dr. Harrison's opinions may be weighed under the proper legal standards. The ALJ and Appeals Council are entitled to determine the credibility of medical sources and weigh their opinions accordingly. *Greenspan*, 38 F.3d at 237. Moreover, the new and material evidence from Dr. Harrison directly contradicted several of the findings upon which the ALJ based the disability determination.

In light of the new and material evidence submitted to the Appeals Council, Commissioner's final decision was not substantially supported. Remand for further consideration of the new evidence by either the Appeals Council or the ALJ is warranted.

The decision of the Administrative Law Judge is hereby **REMANDED** for further review.
**SIGNED this 27th day of March, 2014.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE